IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TERRANCE EUGENE ATWOOD; COLLEEN BERNICE ATWOOD; AND DEVON EUGENE ATWOOD, | ) ) ) ) | CIV. NO. 09-00055 SOM/BMK NINTH CIRCUIT NO. 08-72312 |
| Petitioners, | ) ) | ORDER |
| vs. | ) ) | |
| ERIC H. HOLDER, JR., Attorney General of the United States, | ) ) ) | |
| Respondent. | ) ) ) ) ) | |

ORDER

I.   INTRODUCTION.

This matter comes before this court by order of the Ninth Circuit. The Ninth Circuit asks this court to examine the limited question of whether the Government is estopped by its own actions from denying an adjustment of the immigration status of Petitioners Terrance Eugene Atwood, Colleen Bernice Atwood, and Devon Eugene Atwood. Petitioner Terrance Eugene Atwood, a Canadian citizen, claims that he is entitled to remain in the United States despite having overstayed his visa because the Government allegedly misinformed him about the visa application process and about his eligibility for United States citizenship. Petitioners Colleen Bernice Atwood and Devon Eugene Atwood appear to be seeking to remain in the United States based on

their relationship to Petitioner Terrance Eugene Atwood.  Thus, their status depends on his.  As there is no evidence of misinformation, this court concludes that Petitioners' estoppel claims fail.

II.		BACKGROUND.

Terrance Eugene Atwood ("Atwood") is the son of a United States father and a Canadian mother.  Atwood's father was working in Montana at the time Atwood was born, but Atwood's mother went to Canada to give birth to him because there was "no hospital in Montana close enough to where my father worked that could be reached in wintertime."  Exs. 7 & 9 to the Deposition of Terrance Eugene Atwood (October 11, 2009), attached as Ex. 4 to Respondent's Memorandum.  Though raised in Canada and identifying himself as Canadian, Atwood traveled regularly to the United States.  Atwood Dep. at 12-13, 20.

Understanding that he might have United States citizenship through his father, Atwood repeatedly asked his father to assemble the evidence to show that he met the requirements for United States citizenship.  Atwood Dep. at 60, 62.  Atwood's father could transmit citizenship to his Canadian-born son only if the father had lived in the United States for ten years before Atwood's birth, at least five of which had to have been after the age of sixteen.  See Ex. 7 to Atwood Dep. Atwood's father passed away in February 1988, before Atwood or

his father had gathered proof of Atwood's United States citizenship.  Atwood Dep. at 12.

Shortly after his father's death, Atwood learned that, for a limited time, Canadians could participate in the diversity immigration visa lottery.  The diversity immigration visa lottery made a limited number of immigrant visas available to individuals from countries that had a historically low rate of immigration.  An individual selected through the lottery could apply for a diversity visa by a set deadline and might qualify for permanent resident status.  See Carrillo-Gonzales v. INS, 353 F.3d 1077, 1078 n.1 (9th Cir. 2003) (describing the diversity visa program).

Atwood submitted applications for the lottery every day for thirty days in a row.  Atwood Dep. at 67.  He was selected, which meant he could apply for a diversity visa.  Ex. 10 to Atwood Dep.  He was notified in March 1990 that "since this program has a limited time of operation, you must act quickly to benefit from your registration."  Id.  Atwood had to meet an extended deadline of September 30, 1991.  See Pub. L. No. 99-603 § 314.  Atwood submitted a timely visa application. Atwood Dep. at 71, 73.

The United States Consulate in Vancouver noticed from Atwood's application that Atwood's father had been born in the United States.  Ex. 1, attached to Respondent's Mem.  If Atwood

3

was an American citizen, he was clearly ineligible for a diversity visa. On March 26, 1990, the Vancouver Consulate directed Atwood to contact the United States Consulate in Calgary for a citizenship determination. Atwood Dep. at 74. The Vancouver Consulate explained:

> It is noted from [the biographical information sheet attached to the application] that your father was born in the U.S. As you are in the Calgary Consular district, please contact the U.S. Consulate in Calgary-(Citizenship Section) to have a Citizenship determination. Please have that office contact Vancouver with the results so we can proceed with your Immigration (NP-5) file.

Ex. 12 to Atwood Dep.

Atwood says he did contact the Calgary Consulate to clarify his citizenship. He says that, in that regard, he completed paperwork that included a preliminary citizenship questionnaire. Atwood Dep. at 78-79; Ex. 3, attached to Respondent's Mem. Atwood says a Calgary Consulate official told him that he needed to submit information about when his father had been in the United States.

Concerned that the citizenship determination would be a lengthy process that would not be completed before the visa deadline, Atwood asked a Calgary Consulate official if there was a way to speed up the citizenship process. Atwood Dep. at 80. According to Atwood, the official responded that a lot of the necessary information might be in Montana and suggested that

4

Atwood move to Montana and apply for citizenship from there. Id. at 80-82.

Atwood did not travel to Montana, did not talk further with the Calgary Consulate, and did not check the status of his visa application pending in the Vancouver Consulate before the September 30, 1991, deadline. Id. at 86. Instead, Atwood "received a [job] offer [he] could not refuse," accepted the offer, and moved to Yemen for the job. Id. at 82. Atwood says that his visa application ended up not being processed, as the Vancouver Consulate allegedly cancelled his application on the assumption that Atwood was moving to Montana to seek citizenship. Id. at 93, 96.

On October 15, 1994, after working overseas for a few years, Atwood and his family moved to Kahului, Maui, expecting that Atwood could become a citizen in Hawaii. Id. at 21, 96; Ex. 8 to Atwood Dep. In 1995, Atwood got a temporary visa that allowed him to stay in the United States for six months, until June 19, 1996. Ex. 2 to Atwood Dep.

Two years later, Atwood, having overstayed his visa, applied in Hawaii for a certificate of citizenship. Atwood Dep. at 26. A person who claims to have derived United States citizenship or to have had citizenship transmitted from a parent may apply for such a certificate. 8 U.S.C. § 1452. Atwood then ran into the problem that had affected his diversity visa

application: he needed information on how long his father had been in the United States.

On July 23, 1997, Officer Gee of the Immigration and Naturalization Service interviewed Atwood in connection with his certificate of citizenship application.  Ex. 2 to Atwood Dep.; Atwood Dep. at 30.  Atwood says that Gee asked him some questions and had Atwood recite the oath of allegiance.  Atwood Dep. at 36.  Gee asked Atwood for additional information about his father and indicated that failure to provide that information by August 22, 1998, could result in denial of his application.  Atwood Dep. at 43; Ex. 4 to Atwood Dep.

Although Atwood says that he did not know that he had to submit information by any deadline, he did submit some information.  Atwood Dep. at 51, 52, 60.  Ultimately, Atwood's application for a certificate of citizenship was denied on the ground that his father had not lived in the United States for five years after age sixteen.  Ex. B, attached to Petitioner's Brief; Atwood Dep. at 52.

On November 25, 1998, Atwood appealed the denial, arguing that his parents' intent to reside in Montana was sufficient to support his citizenship application.  Exs. 8 & 9 to Atwood Dep.  On June 19, 2000, Atwood's appeal was dismissed. Ex. 7 to Atwood Dep.; Ex. D, attached to Petitioner's Brief.

In 2007, the Department of Justice began removal proceedings against Atwood given the 1996 expiration of his six-month visa. Ex. 2 to Atwood Dep. Atwood moved to terminate the proceedings and applied for an adjustment of his status to permanent residency. Ex. F, attached to Petitioner's Brief. At the hearing before the Immigration Judge, Atwood argued that he should not be removed given the Government's allegedly incorrect or misleading advice in 1990 regarding his citizenship. He contended that the alleged misinformation had prevented him from receiving a diversity visa in 1990. Ex. 1, attached to Respondent's Mem. On October 11, 2007, the Immigration Judge denied Atwood's motion to terminate proceedings and denied his application for adjustment to permanent resident status. The Immigration Judge granted Atwood's motion for voluntary departure and gave him until December 10, 2007, to leave the United States. Ex. F, attached to Petitioner's Brief.

The Board of Immigration Appeals upheld the Immigration Judge's decision, finding no reason to grant Atwood's application for adjustment of status. The BIA noted that Atwood has "no immediately available visa for purposes of adjustment of status." Ex. 1 at 000004, attached to Respondent's Mem. See 8 U.S.C. § 1255(a)(2). The BIA noted that Atwood argued "only that a government official's reckless conduct, i.e., providing incorrect information about his

7

qualifications for United States citizenship, prevented him from pursuing adjustment of status through the diversity visa." The BIA viewed the alleged conduct as amounting to, at most, negligence, not affirmative misconduct. Ex. 1 at 000004, attached to Respondent's Mem. The BIA said it lacked jurisdiction over Atwood's claim that the Government was equitably estopped from denying him an adjustment of status. Id.

On May 30, 2008, Atwood appealed the BIA's final order to the Ninth Circuit and asked that court to stay removal proceedings, arguing that the Government was equitably estopped from denying him relief. In November 2008, the Ninth Circuit construed his request for a stay of removal proceedings as a motion for a stay of the voluntary departure period and granted that request. Examining the claim that the Government had taken affirmative action to prevent Atwood from completing his diversity visa application in 1990, the Ninth Circuit sua sponte transferred the matter to this court for a de novo hearing on Atwood's estoppel claims. This court received the Ninth Circuit's order on February 10, 2009.

The parties participated in numerous conferences with this court, conducted discovery, and filed briefs on the limited issue of whether the Government had affirmatively misled Atwood such that the estoppel doctrine applied. Atwood says that he

was selected to apply for a diversity visa, and that he would have applied for and received the visa if the Government had not misled him into believing he was a United States citizen.[1] The Government responds that, as it did not mislead Atwood, estoppel is inapplicable. Both parties agreed that no evidentiary hearing was necessary.

This court scheduled oral argument for February 22, 2010. Atwood's attorney failed to appear, possibly having miscalendared the date. This court attempted unsuccessfully to contact him by calling the two telephone numbers it had for him, emailing him, and even calling his clients to see if they knew where he was. This court had faxed its usual prehearing inclinations to Atwood's attorney on February 19, 2010, and that should have triggered the attorney to prepare for an imminent hearing. Under those circumstances, the court decided not to reschedule the hearing and instead considers the matter submitted on the briefs.

---

[1] Atwood also argues that the oath of allegiance he took when he applied for a certificate of citizenship rendered him a United States citizen. This argument falls outside the scope of what this court was asked by the Ninth Circuit to examine. On February 1, 2010, this court stated that it would not consider this argument, which Atwood remained free to raise in a different proceeding. The court notes, moreover, that Atwood, not having raised this issue before either the Immigration Judge or the BIA, has not exhausted his administrative remedies with respect to the issue. See 8 U.S.C. § 1252(d)(1).

III.     ANALYSIS.

The Ninth Circuit transferred this matter to this court pursuant to 28 U.S.C. § 2347(b)(3), which provides:

> When the agency has not held a hearing before taking the action of which review is sought by the petition, the court of appeals shall determine whether a hearing is required by law. After that determination, the court shall--
>
> (3) transfer the proceedings to a district court for the district in which the petitioner resides or has its principal office for a hearing and determination as if the proceedings were originally initiated in the district court, when a hearing is not required by law and a genuine issue of material fact is presented. The procedure in these cases in the district court is governed by the Federal Rules of Civil Procedure.

See also Morgan v. Gonzales, 495 F.3d 1084, 1090 (9th Cir. 2007).

Atwood argues that the Government is estopped from removing him given its allegedly misleading statements. Atwood's argument fails, as he presents no evidence that the Government misled him.

"'A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.'"  Morgan, 495 F.3d at 1092 (citing Watkins v.

United States Army, 875 F.2d 699, 707 (9th Cir. 1989) (en banc)).  Assuming estoppel is an available remedy, the party seeking estoppel must satisfy the following elements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Morgan, 495 F.3d at 1092 (internal citations omitted).

Atwood does not establish that the Government engaged in any affirmative misconduct.  Instead, the record indicates that the Government told Atwood only that he needed to clarify his citizenship status to determine whether he could seek a diversity visa.

Initially, the Vancouver Consulate told Atwood to contact the Calgary Consulate for a citizenship determination.  The Calgary Consulate then told him to submit information about when his father had lived in the United States.  The Government did not mislead him, did not tell him that he was a citizen, and did not tell him that he could complete the diversity visa application at some later time.

At most, the Government suggested Atwood go to Montana to clarify his citizenship.  Atwood Dep. at 82.  There is nothing inaccurate or misleading about this suggestion.

11

Atwood's father lived in Montana, and when he lived there affected whether he had transmitted citizenship to his son.

Atwood also complains that the Government incorrectly told him that he did not need to take any action beyond filing an application to obtain a diversity visa. That argument is unpersuasive. Atwood indisputably received documents informing him that he had a limited time to apply for the visa and that the visa application might be affected by a citizenship determination. He tellingly admits that he knew he would have to qualify for the visa, and that merely applying for the visa would not guarantee him a visa. Atwood Dep. at 69-70. Nor is there any evidence supporting Atwood's claim (made in his Ninth Circuit brief but not in filings with this court) that the Government misled him by saying that his claim to United States citizenship made it unnecessary for him to seek permanent resident status. See Petitioner's Response to Respondent's Opposition to Petitioner's Request for Stay of Removal, No. 08-72312, at 2. Even assuming the Government told him that he did not need to seek permanent resident status, Atwood appears to have understood that a mere claim of citizenship did not absolve him of the need to ensure that he had some kind of visa. It was apparently for that reason that he obtained a temporary visa in 1995. In any event, Atwood fails to demonstrate the Government made the alleged statement.

This court concludes from the record before it that Atwood was in no way prevented by misleading advice from obtaining a visa or resolving his citizenship. He says that he "did not know whether a citizenship determination was part of the visa thing or not," Atwood Dep. at 76, but then indicates that he knew the visa was related to the citizenship issue. Thus, he says that he expected the Calgary Consulate "to relay their information about citizenship to Vancouver." Atwood Dep. at 84. He concedes that he did not contact either the Vancouver or the Calgary Consulate to check on the status of his visa or citizenship determination, although obtaining a visa was his highest priority. When he was told that additional information for the visa was needed before immigration officials could proceed, he took no action. Atwood Dep. at 85-86. Instead, he went to Yemen.

Atwood clearly had choices. On the one hand, he says, "I would have turned down citizenship if they said that I had a choice between citizenship and my family getting visas." Atwood Dep. at 84. See also id. at 79 ("I told you, no longer after that did I ever consider pursuing my own personal citizenship, because at that point in time we had an opportunity for visas for the entire family."). On the other hand, he says, "I was told by INS to pursue citizenship not a visa. . . . As this was what I had wanted all my life I was more than happy to drop the

13

visa process for citizenship." Ex. B, attached to Petitioner's Brief. The choice not available to Atwood if he wanted to live in the United States was to do nothing. There is no evidence that the Government told Atwood to be inactive with respect to both a visa and citizenship.

Even if the Government made the statements Atwood alleges, equitable estoppel would not apply. That is because Atwood fails to show that he relied on the alleged statements. Atwood did not go to Montana to get information concerning his father's residence. Nor did he apply for citizenship until 1997, seven years after he says the Government advised him to resolve his citizenship. Absent detrimental reliance, equitable estoppel is inapplicable. Morgan, 495 F.3d at 1092.

Atwood has no greater success when he recasts his equitable estoppel argument as a contention that the deadline for completing the visa process should be equitably tolled. As Atwood himself recognizes, equitable tolling "must be reserved for those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce a limitation period against the party, and injustice would result." Petitioner's Brief at 3 (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). This case does not present the rare circumstance in which equitable tolling applies;

Atwood's present circumstance is not the result of external circumstances.

IV.     CONCLUSION.

There is no evidence that the Government misinformed Atwood, or that Atwood detrimentally relied on alleged misinformation from the Government.  Accordingly, as sympathetic as this court is to Petitioners' plight, it concludes that equitable estoppel is inapplicable.

The Clerk of Court is directed to enter judgment for Respondent, to close this case, and to transmit a copy of this order to the Ninth Circuit, referencing Ninth Circuit No. 08-72312.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 24, 2010



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

Atwood, et al. v. Holder, Civ. No. 09-00055, SOM/BMK; ORDER.